# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4043 | **DATE** | 4/17/2002 |
| **CASE TITLE** | Watson, et al vs. CBSK Financial Group | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter amended memorandum opinion and order. For the foregoing reasons, Defendants' Motions to Dismiss and for Judgment on the Pleadings are GRANTED as to Counts V, VI, VII and VIII, and Denied as to all remaining counts. Defendant's Motion for Partial Reconsideration is GRANTED.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | APR 1 8 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | CDY | 42 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TP | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BERLIN LAMAR WATSON, LATARA )
WATSON, et al, )
        Plaintiffs, )
)    No. 01 C 4043
v. )
)    HONORABLE JOHN A. NORDBERG
CBSK FINANCIAL GROUP, INC., et al, )
)
        Defendants. )

DOCKETED APR 1 8 2002

## AMENDED MEMORANDUM OPINION AND ORDER

Plaintiffs Berlin Lamar Watson, Latara Watson, James Willard and Mary Willard ("Plaintiffs") have brought this action against CBSK Financial Group, Inc. (which does business as American Home Loans) ("AHL") and Citimortgage, Inc.("Citi"). Before the court is Citi's motion to dismiss and AHL's motion for judgment on the pleadings.[1] This memorandum opinion supersedes the original memorandum opinion issued on March 26, 2002, and addresses matters raised in Defendant AHL's Motion for Partial Reconsideration regarding a possible clerical error.

## BACKGROUND

Plaintiffs all acquired home mortgages from Citi through mortgage broker AHL. Both loans provided for the payment of a "yield spread premium" from Citi to AHL. The yield spread premium is a payment from the lender to the broker for delivering a loan with an interest rate above a preset "par" rate. The amount of the premium is determined from a rate sheet provided

---

[1]AHL's motion for judgment on the pleadings is essentially a reiteration of AHL's previous motion to dismiss.

by the lender; the higher the interest rate is above the par (or market rate), the higher the yield spread premium that the broker receives. The Plaintiffs maintain that the payment of a yield spread premium ("YSP") jacks up the interest rate that the borrower pays, results in significantly greater costs to the borrower, and provides excessive compensation to the broker that is unrelated to the value of the services that the broker provides. As to the latter, Plaintiffs maintain the payments amount to illegal referral fees under Section 2607 of the Real Estate Settlement Procedure Act, 12 U.S.C. §2601, et seq.("RESPA").

The Plaintiffs filed an eighth count complaint which raises both individual[2] and class claims:

1. Count I is against both Defendants, and claims that Defendants violated RESPA by paying/receiving a YSP for the referral of business, which resulted in an overcharge to the borrowers and excess compensation to the broker;

2. Count II is against both Defendants, and claims that Defendants violated the Illinois Consumer Fraud Act ("IFCA") (815 ILCS §505/2) by paying a YSP in violation of RESPA, failing to provide meaningful disclosure, and unnecessarily increasing mortgage costs to borrowers;

3. Count III is against AHL, alleging a breach of fiduciary duty based upon AHL's acceptance of a YSP, failure to obtain the best interest rate, failure to treat borrowers fairly, and failure to make necessary disclosures;

4. Count IV is against Citi, and claims that Citi induced a breach of fiduciary duty on the part of AHL by paying AHL excess compensation in the form of a YSP;

---

[2] The class claims in Counts I-IV were stricken/dismissed on December 6, 2001.

5. Count V is a class RESPA claim against both Defendants, alleging that borrowers are entitled to close mortgage transactions without unreasonable fees, and that Defendants structured the transaction so that fees in excess of the 1% FHA[3] maximum were paid;

6. Count VI is a class consumer fraud claim against both Defendants alleging that Citi paid and AHL received fees (YSP's) in excess of the 1% maximum and that Defendants failed to disclose the evasion of the 1% maximum;

7. Count VII is a restitution claim against AHL seeking the return of fees received in excess of the 1% maximum;

8. Count VIII is a breach of contract claim against Citi, alleging that Citi violated the mortgage contract by paying fees in excess of the 1% maximum.

## LEGAL STANDARDS

### Motion to Dismiss

Evaluating the legal sufficiency of a plaintiff's factual allegations requires the courts to adhere to a strict standard. A court may grant a motion to dismiss only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Cushing v. City of Chicago*, 3 F.3d 1156, 1159 (7th Cir.1993)(quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). When considering a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations in the complaint and view them, along with the reasonable inferences to be drawn from them, in the light most favorable to the plaintiff.

---

[3]"FHA" is the common acronym for the Federal Housing Authority; this agency is overseen by the Department of Housing and Urban Development ("HUD").

3

*Cornfield v. Consolidated High School District No. 230,* 991 F.2d 1316, 1324 (7th Cir.1993). However, the court need not accept as true conclusory legal allegations. *Baxter v. Vigo County School Corp.*, 26 F.3d 728, 730 (7th Cir.1994). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely, but that is not the test." *Pickrel v. City of Springfield,* 45 F.3d 1115, 1118 (7th Cir. 1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). All that F.R.C.P. Rule 8 requires to state a claim in federal court "is a short statement, in plain (that is, ordinary, nonlegalistic) English, of the legal claim." *Kirksey v. R.J. Reynolds Tobacco Company*, 168 F.3d 1039, 1041 (7th Cir. 1999) "Complaints need not plead law or match facts to every element of a legal theory...." *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). Moreover, more can be less under the Federal Rules of Civil Procedure; a litigant that includes details in his complaint well-beyond the limited requirements of Rule 8 may plead himself out of court. *Holman v. State of Indiana*, 211 F.3d 399, 406 (7th Cir. 2000), *cert. denied*, 121 S. Ct. 191(2000).

**Disputed Substantive Provisions**

**RESPA**

> §2607. Prohibition against kickbacks and unearned fees
> (a) Business referrals
> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.
> (b) Splitting charges
> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

4

(c) Fees, salaries, compensation, or other payments
Nothing in this section shall be construed as prohibiting...(2) the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed....

12 U.S.C. §2607.

**HUD Regulations**

§ 203.27 Charges, fees or discounts.
(a) The mortgagee may collect from the mortgagor the following charges, fees or discounts:...
    (2) A charge to compensate the mortgagee for expenses incurred in originating and closing the loan, the charge not to exceed:
        (i) $20 dollars or one percent of the original principal amount of the mortgage..., whichever is greater...
    (3) Reasonable and customary amounts, but not more than the amount actually paid by the mortgagee, for any of the following items:
        (i) Recording fees and recording taxes...;
        (ii) Credit Report;
        (iii) Survey,...;
        (iv) Title examination; title insurance,...,
        (v) Fees paid to an appraiser or inspector...,
        (vi) Such other reasonable and customary charges as may be authorized by the Commissioner....
    (4) Reasonable and customary charges in the nature of discounts.
    (5) Interest from the date of closing....
(e) Nothing in this section will be construed as prohibiting the mortgagor from dealing through a broker who does not represent the mortgagee, if he prefers to do so, and paying such compensation as is satisfactory to the mortgagor in order to obtain mortgage financing.

24 CFR § 203.27.

## DISCUSSION

The focus of this action is on the payment of YSP's, a practice that has not been definitively addressed by our appellate court or, for that matter, by HUD. In its 2001 Statement of Policy, HUD colored the subject gray, noting that "yield spread premiums are not per se legal

5

or illegal...." 66 Fed. Reg. 53052 ("Policy Statement"). Fortunately, some recent district court cases persuasively address issues relevant to resolving the Defendants' motions.

### 1. RESPA Claims

There are two RESPA claims. Count I, an individual claim, alleges that: (1) Plaintiffs were entitled to have their mortgages closed without paying charges that solely represented referral fees; (2) Citi paid and AHL received YSP's that were simply referral fees; (3) the YSP's were in excess of reasonable compensation for any services provided by AHL; and (4) as a consequence of the YSP's, Plaintiffs were significantly overcharged. Count V, the class claim, alleges that: (1) Plaintiffs were entitled to have their loans closed without unreasonable fees that did not represent compensation for services provided; and (2) that Citi's payment of YSP's to AHL exceeded the 1% limit. Defendants argue that Count I cannot stand because YSP's are not per se illegal, the Plaintiffs failed to allege facts showing that the payment was improper for their particular loans, and Plaintiffs failed to allege that the broker did not receive the payment for services actually performed. Defendants also maintain that Count V, the class claim, cannot stand because the FHA 1% cap does not apply to YSP's, which are paid by the lender, and that Plaintiffs were never charged more than 1% in origination fees. Plaintiffs counter that it is illegal for a broker to receive a fee in excess of 1% and that the court must consider all the broker's compensation in determining whether the 1% cap has been exceeded. Plaintiffs further argue that the YSP's are, in any event, illegal as referral fees.

HUD's determination, noted above, that YSP's are not per se illegal has been accepted by the courts. *See Michalowski v. Flagstar Bank*, No. 01 cv 6095, 2002 WL 113905, at *3 (N.D. Ill. Jan. 25, 2002)( "general consensus...is that YSP's are not *per se* illegal"); *Vargas v. Universal*

*Mortgage Corp.*, No. 01 cv 0087, 2001 WL 1545874, at *1 (N.D. Ill. Nov. 29, 2001) (same). In 1999, HUD formulated a two part test to determine whether a payment (typically a YSP) from a lender to a mortgage broker is legitimate under RESPA or whether it is a forbidden referral fee: (1) "whether goods or facilities were actually furnished or services were actually performed for the compensation paid" and (2) "whether the payments are reasonably related to the value of goods or facilities that were actually furnished or services that were actually performed." Policy Statement at 53054. All the fees paid to the broker are to be scrutinized in determining whether the broker's total compensation is reasonably related to the goods/services that the broker provides. *Id.* Thus, "total compensation" includes both fees paid by the borrower and any yield spread premium paid by the lender. *Id.* at 53055. Significantly, the compensation paid "must be commensurate with the amount normally charged for similar services, goods or facilities." *Id.* "Simply delivering a loan with a higher interest rate is not a compensable service." *Id.* The courts have widely acknowledged and followed the HUD test. *See, e.g., Empalmado v. First Franklin Financial Corp.*, No. 01 cv 1117, 2002 WL 193411 (N.D. Ill. Feb. 7, 2002); *Schauf v. Mortgage Bankers Service Corp.*, No. 01 cv 4442, 2001 WL 1654711 (N.D. Ill. Dec. 20, 2001); *Vargas v. Universal Mortgage Corp.*, No. 01 cv 0087, 2001 WL 558045 (N.D. Ill. May 21, 2001); *Golon v. Ohio Savings Bank*, No. 98 cv 7430, 1999 WL 965593 (N.D. Ill. Oct. 15, 1999). Applying the HUD test to make this determination, which requires a very detailed factual analysis of the individual transaction. *Sims v. First Franklin Financial Corp.*, No. 01 cv 1116, 2001 WL 1155271, at * 3 (N.D. Ill. Sept. 28, 2001). The basic principle to be gleaned from all this is that lenders can pay brokers reasonable compensation for the services the brokers perform,

but the lender cannot pay a broker a referral fee for sending business the lender's way. *See Vargas*, 2001 WL 1545874 at *1; *Schauf*, 2001 WL 1654711 at *2.

The gravamen of Count V is that broker compensation is limited to a 1% origination fee and the YSP must be aggregated with any origination fee to determine whether the cap has been exceeded. At least two courts have considered this issue, and both courts concluded that such an aggregation was improper and that broker compensation is not limited to a 1% origination fee. *See Vargas*, 2001 WL 1545874, at *3 ; *Bjustrom v. Trust One Mortgage*, 178 F. Supp.2d 1183 (W.D. Wash. 2001). The bases for these decisions are ultimately persuasive.

The plain language of the relevant provisions is directly counter to Plaintiffs' theory. An examination of Section 203.27 shows that an origination fee is but one fee that brokers are entitled to receive; there are a host of others, including charges for recording fees, surveys, title searches, appraisers, etc. *See* 24 CFR § 203.27. "The 1% 'origination fee' is merely one of a number of charges that may be collected from a borrower." *Bjustrom*, 178 F.Supp.2d at 1189. In addition, Section 203.27 regulates what the "mortgagee may collect from the borrower." *See* 24 CFR § 203.27. By its plain language, it does not apply to YSP's that are paid by the lender, not the borrower. *Bjustrom*, 178 F.Supp.2d at 1189-90; *Vargas*, 2001 WL 1545874, at *3.

Further, the *Bjustrom* court explicitly rejected the contention that the borrower really does pay the YSP in the form of higher interest rates, concluding that the provision relates only to direct payments. 178 F. Supp.2d at 1190. The court noted that §203.27 does not restrict all payments from the borrower; interest payments, undoubtedly a large charge and significant source of profit for the lender, are not covered in the provision. *Id.* at 1190-1. The court concluded that because interest payments are not included, and YSP's are paid in expectation of

8

interest payments, YSP's should not be counted as part of the 1% origination fee limit. *Id.* at 1191.

Lastly, HUD's definition of total broker compensation explicitly includes both fees paid by the borrower and any yield spread premium paid by the lender, *see* Policy Statement at 53055, which presupposes that brokers can and will be compensated by both the borrower and the lender. Mortgages with YSP are widely utilized and regularly accepted by HUD. *See Bjustrom*, 178 F.Supp.2d at 1192; *Vargas*, 2001 WL 1545874, at *3.

Thus, Plaintiffs contentions that total broker compensation is limited to the 1% ceiling and that YSP counts against that ceiling are utterly refuted by the existing case law, the HUD Policy Statement, and the plain language of the regulation. Count V must be dismissed.[4]

The result is far different for Count I, the gravamen of which is that the YSP's constitute forbidden referral fees. That YSP's are not per se illegal gets the Defendants little here, as that general truism says nothing about the legality of the YSP's paid in these particular loans. "HUD's position that lender payments to mortgage brokers are not illegal per se does not imply, however, that yield spread premiums are legal in individual cases or classes of transactions." Policy Statement at 53052. That the Plaintiffs failed to allege facts showing that the YSP's were improper in their particular loans is a nonstarter. Under the notice standard of Rule 8, the Plaintiff need not plead extensive facts. As to Defendants claim that Plaintiffs failed to allege that the YSP's were not for services actually performed, the amended complaint belies this assertion. Plaintiffs repeatedly state, or fairly imply, that the YSP's were <u>not</u> for services

---

[4]In their response, Plaintiff appear to be making new claims regarding other fees that were not discussed in the complaint. This is for naught, as the complaint cannot be amended in a response brief.

9

provided by the broker. (*See, e.g.,* Amended Complaint at ¶¶ 28, 30, 32, 33, 42, 56.) Moreover, assessing whether a particular YSP passes muster in a given transaction is a very fact intensive exercise, and therefore unlikely to be resolved in a motion to dismiss. *See Michalowski*, 2002 WL 113905 at *4. This RESPA claim survives.[5]

## 2. Consumer Fraud Claims

There are two consumer fraud claims raised against the Defendants. Count II, an individual claim, alleges that: (1) Citi paid and AHL received YSP's as referral fees or commercial bribes; (2) Defendants failed to disclose the impact of the YSP's; (3) the payments led to Plaintiffs being substantially overcharged; and (4) the payments, which were unrelated to services provided, deprived Plaintiffs of the loyalty of their broker. Count VI, a class claim, makes the following allegations: (1) that Plaintiffs were entitled to pay no more than a 1% origination fee; (2) that Plaintiffs were entitled to fair and honest treatment from AHL; (3) that the YSP resulted in broker compensation exceeding the 1% limit; and (4) that Defendants did not disclose that the 1% limit was being evaded. Defendants argue that the consumer fraud claims must be dismissed because the Defendants made all the disclosures required by RESPA, which bars Plaintiffs claims under Illinois law. In addition, Defendants claim that YSP's are not subject to the 1% ceiling. Defendants also argue that the relevant agreements make it clear that AHL was an independent contractor, would receive compensation from other sources, and could not guarantee the lowest interest rate. Lastly, Defendants maintain the claims are inadequately pled. Plaintiffs argue the claims are adequate, citing *Vargas*.

---

[5]Caveat: to the extent Plaintiffs intended to raise claims in Count I that were foreclosed in our discussion of Count V, such as YSP's being subject to the 1% ceiling, they are foreclosed for purposes of Count I as well.

10

As to Count II, we conclude that the claim is adequately pled. That the required HUD disclosures were made does not immunize Defendants entirely. Significantly, HUD has opined "that disclosure alone does not make illegal fees legal under RESPA." Policy Statement at 53056. Further, "omission or concealment of a material fact can violate the IFCA as well as a misrepresentation." *Vargas*, 2001 WL 558045, at *3. We note that Plaintiffs' claim appears not so much based on the YSP not being disclosed as the impact of the YSP on the interest rate and overall cost to the borrower not being disclosed, and such claims have passed muster in this district. *See generally Id.; Michalowski*, 2002 WL 113905, at *6.

Count VI is based entirely on the premises that broker compensation is limited to 1% and that the YSP is to be aggregated with the origination fee paid by the borrower to determine if the 1% cap is exceeded. As the court has rejected both these premises, this claim must be dismissed. *See generally, Vargas*, 2001 WL 1545874 at *4.

### 3. Breach of Fiduciary Duty

Count III, against AHL, alleges that :(1) AHL had fiduciary obligations to Plaintiffs; (2) AHL had a duty to fully disclose material facts to Plaintiffs, including AHL's sources of compensation and its impact on the loan transaction; (3) AHL had a duty to treat Plaintiffs fairly by refraining from self dealing and obtaining a low rate; and (4) AHL violated its duties. AHL argues that the claim must be dismissed because all the required RESPA disclosures were made and the contract provided that AHL was an independent contractor who could not guarantee the lowest rates and who could be compensated by other parties. Plaintiffs argue that there was a fiduciary relationship and there was a total failure to disclose the impact of the YSP's.

11

We conclude the claim survives. "The existence of an agent/principal relationship rests on factual underpinnings, and cannot be determined on a motion to dismiss." *Michalowski,* 2002 WL 113905, at *7. *See also Vargas,* 2001 WL 558045 at *3 (same).

### 4. Inducement to Breach Fiduciary Duty

Count IV, against Citi, alleges that: (1) Plaintiffs were owed a fiduciary duty by broker AHL; (2) Plaintiffs were entitled to full disclosure regarding their broker's compensation and its effect on the transaction; (3) Citi paid AHL YSP's that were nothing but referral fees; and (4) this excess compensation induced AHL to breach its duties to Plaintiffs. Citi argues that the claim must be dismissed because it is inadequately pled, notably by failing to allege that Citi knew of the fiduciary relationship. Plaintiffs argue the claim is adequately presented.

As Rule 8 does not require a Plaintiff to plead facts matching every element of a legal theory, and the complaint puts Citi on fair notice as to the nature of this claim, we conclude this claim is adequately pled. In addition, in this district, nearly identical claims have been found adequate to survive a motion to dismiss. *See generally Hastings v. Fidelity Mortgage Decisions Corp.,* 984 F.Supp. 600, 614-5 (N.D. Ill. 1997). *See also Michalowski,* 2002 WL 113905, at *7.

### 5. Restitution

In Count VII, Plaintiffs allege that AHL was unjustly enriched to the extent that it received fees in excess of the 1% limit permitted by HUD and should be required to make restitution. In its memorandum opinion of March 26, 2002, this court concluded that AHL did not address this claim in its motion and let it stand. Shortly thereafter, AHL moved to reconsider, arguing that the court misread AHL's presentation, and that AHL did challenge Count VII.

The source of the court's confusion is fairly clear. AHL incorporated the arguments of Citi in its motion. However, Count VII is only directed against AHL, and Citi did not directly address the claim ( nor would Citi have standing to). What AHL apparently intended was to incorporate the arguments against the 1% cap, which would also apply to Count VII's restitution claim. While this presentation was a bit casual, given that both sides exhaustively addressed that applicability of the 1% cap, and that it would make little sense to permit a claim that had been fatally undermined by the court's prior analysis to survive, Count VII is dismissed.

### 6. Breach of Contract

In Count VIII, Plaintiffs maintain that Citi violated the relevant contracts (mortgage and note) by paying compensation in excess of the 1% limit permitted by HUD. Citi argues that the claim must be dismissed because paying a YSP does not violate the 1% ceiling, no section of the contracts was violated, the contracts contain no restriction on fees paid to mortgage brokers, and the only restrictions in the documents relate to what Citi can charge not pay. Plaintiffs respond that, pursuant to ¶8 of the mortgages (Amended Complaint, Exhibits B & F), the lender can only collect "fees and charges authorized by the secretary," and that the contracts incorporate the 1% ceiling provided for by law.

Plaintiffs' response dooms this claim – Citi was not "collecting" the disputed YSP, it was paying it. Moreover, to the extent Plaintiffs are arguing the contract incorporates the law, they appear to be trying to duplicate their RESPA claims. Count VIII is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss and for Judgment on the Pleadings are GRANTED as to Counts V, VI, VII, and VIII, and DENIED as to all remaining counts. Defendant's Motion for Partial Reconsideration is GRANTED.

**ENTER:**

**JOHN A. NORDBERG**
Senior United States District Judge

**DATED:** 4/17/02